## Case No. 8,878.

### In re McLEAN.

[2 N. B. R. 567 (Quarto, 173).] [1]

District Court, North Carolina.[2] 1869.

BANKRUPTCY — AMENDMENT BY IMPLICATION—EXEMPTION.

The approval by congress of the new constitution of North Carolina, does not operate as an amendment of the bankrupt law with respect to the additional exemptions therein provided for. A bankrupt is not entitled to an exemption of one thousand dollars in real estate, and five hundred dollars in personal property, under the new constitution.

Question certified by Wm. A. Guthrie, register. Is the bankrupt entitled to an exemption of one thousand dollars in real estate, and five hundred dollars in personal estate, as provided in the constitution of North Carolina, article ten, sections one and two?

[1] [Reprinted by permission.]
[2] [District not given.]

Brief of J. W. Hinsdale, attorney for assignee: First. Section 14, bankrupt act of 1867 [14 Stat. 522], provides that "such other property as now is, or hereafter shall be exempted from attachment, seizure, or levy on execution by the laws of the United States, and such other property as is exempted from the levy and sale by the laws of the state in which the bankrupt has a domicile, at the time of commencement of the proceedings in bankruptcy, to an amount not exceeding that allowed by such state exemption laws in force in the year 1864, shall be excepted from the operation of the provisions of that section." The present constitution of North Carolina, under which the bankrupt claims an exemption, was not in force in the year 1864.

Second. But it is urged by the bankrupt that this constitution, having been approved by congress, has thereby become a law of the United States, and must be administered as such by the bankruptcy court, with regard to its homestead exemptions. It is insisted, however, by the assignee, that this constitution was not enacted by congress. It does not appear in the official copy of the laws of congress. (See acts and resolutions of the United States passed at the second session of the fortieth congress.) The approval by congress was restricted to the question "whether it is republican in form." Article 4, section 4 of the constitution of the United States, provides that "the United States shall guarantee to every state in this Union a republican form of government." Without yielding the point that congress had no right to interfere with the previous constitution of this state, which was republican in form, it is maintained that the only question upon which congress is competent to pass is, as to the form of a proposed constitution, whether it be republican or not. It is the province of the judiciary to decide all the other questions regarding it. This view of the case is supported by the language used in the preamble of the act of congress entitled "An act to admit the states of North Carolina, &c., to representation in congress," to wit: "Whereas, the people of North Carolina, South Carolina, &c., have. in pursuance of the provisions of an act entitled 'An act for the more efficient government of the rebel states,' passed March 2d, 1867 [15 Stat. 2], and the acts supplementary thereto, framed constitutions of state government which are republican." See act of congress passed June 25, 1868 [Id. 73].

Third. But granting that the congress of the United States intended to approve and ratify the constitution of North Carolina in the fullest extent, such approval and ratification do not render valid a law, which violates the constitution of the United States. Congress itself cannot enact such a law. The exemption laws in question are unconstitutional, as having the effect to prevent the collection of debts. (See fifth amend-

ment to the constitution of the United States, identical with section 12 of the bill of rights of the state of North Carolina, which was construed by the supreme court of North Carolina in Barnes v. Barnes, 8 Jones [N. C.] 372; Hoke v. Henderson, 4 Dev. 12. "A creditor has a vested right in his debt. It is a part of his estate or property in the broad sense in which the word is used in the section above cited.") Manifestly the exemption from execution of all a debtor's property, is an indirect but thoroughly effectual mode of depriving his creditors of his debt, and it is admitted on all hands, that the fifteen hundred dollar valuation will embrace the whole estate of ninety-nine debtors out of every hundred in North Carolina. A state constitution derives none of its binding force from any action congress may take upon it, but from the people of the state from whom it emanates.

Fourth. The provisions of our constitution in question under a retrospective construction, are in violation of that provision of the constitution of the United States which prohibits the states from passing laws impairing the obligation of contracts, and are therefore void. Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 206; Green v. Biddle, 8 Wheat. [21 U. S.] 1; Mason v. Haile, 12 Wheat. [25 U. S.] 370; Bronson v. Kinzie, 1 How. [42 U. S.] 311; McCracken v. Hayward, 2 How. [43 U. S.] 608. While it is admitted that the states have power in a certain degree over the remedy on a contract, they may not abuse that power in reference to any remedy, so far as to destroy the beneficial effects of the contract. Exemption laws which protect a reasonable amount of property from seizure may not be unconstitutional. Morse v. Goold, 1 Kern. [11 N. Y.] 281. But when they are framed to shield all of the property of nearly all of the citizens of a state, they invade the paramount law of the land, and are absolutely void. In the case of Jacobs v. Smallwood [63 N. C. 112], declaring stay laws unconstitutional, Mr. Justice Reade uses the following language: "The obligation of a contract is the duty of its performance—a full and complete compliance with its terms. Any statute which relieves a party from this duty or enables him to evade it, is void. If a stay law which postpones the enforcement of a contract but for a time, impairs its obligation, how much more so does one, which in ninety-nine cases out of a hundred, has the effect to discharge the debtor altogether. Can there be a more certain and ready way to enable a party to evade the obligation of a contract, than to exempt from execution all his property; such a law may allow a man to be 'comfortable,' but surely holds out no inducement to him to be honest."

BROOKS, District Judge. The counsel for the bankrupt contends in effect, that the acceptance by the congress of the United States of the constitution of North Carolina, was in effect an amendment by congress of the bankrupt act of March 2d, 1867; and that the amendment thereby made had the effect to extend or alter the provisions, contained in the fourteenth section of the bankruptcy act, so as to embrace such a homestead, and such provision of personal property as is provided for in said constitution, in addition to the five hundred dollars in value, allowed to be exempted by said section. I am well satisfied that no amendment of the bankrupt law was contemplated by congress, in the act of acceptance referred to, and I am as well satisfied that that act had not the effect contended for. I have decided this question in the case of Thomas C. Dodson, certified from the fifth district, in which I filed an opinion which was published in October, 1868. I see no reason for changing the views expressed in that opinion. It is not necessary that I should determine the question presented by the counsel for the assignee, in regard to the retrospective character of the homestead provision in the North Carolina constitution, as I think it quite clear that the bankrupt is not entitled in any view of the case to the homestead or the personal property claimed by him.